IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 13-cv-00314 |
| | ) | |
| v. | ) | |
| | ) | |
| J. WETZEL, Secretary of Corrections; | ) | United States Magistrate Judge |
| J. MAZURKIEWICZ, Warden at | ) | Cynthia Reed Eddy |
| SCI Greensburg; W. MATTHEWS, | ) | |
| Unit Manager at SCI Greensburg; | ) | |
| C. MANCINNI, Psychologist at | ) | |
| SCI Greensburg; T. MARHEFKA, | ) | |
| Counselor at SCI Greensburg; K. RABIC, | ) | |
| A.O.D. Teacher at SCI Greensburg; | ) | |
| R. MEADOWS, Counselor at | ) | |
| SCI Greensburg; JOHN DOE; | ) | |
| MR. RIDDLE, DATS Supervisor at | ) | |
| SCI Greene, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently pending before the court is Defendants' Motion to Dismiss Plaintiff's Complaint [ECF No. 10] and Amended Complaint[1] [ECF No. 26]. After review of the entire record, including Defendants' Brief in Support of Motion to Dismiss [ECF No. 33] and Plaintiff's Response in Opposition [ECF No. 36], Defendants' Motion to Dismiss [ECF No. 32] will be granted.

---

[1] In his brief in opposition to Defendants' motion to dismiss, Bennett agrees to dismiss his Amended Complaint [ECF No. 26] because the those claims involve incidents which occurred at SCI – Dallas and, therefore, are not pertinent to the instant case. Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, [ECF No. 36 at ¶ 5]. The operative complaint, therefore, is the original Complaint [ECF No. 10].

1

**Relevant and Material Facts[2]**

Jamal Bennett, ("Plaintiff" or "Bennett"), an inmate currently incarcerated at the State Correctional Institution - Dallas in Dallas, PA, brings suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. During the events that give rise to this lawsuit, Bennett was incarcerated at SCI – Greensburg. Bennett has named seven (7) individuals employed at SCI – Greensburg, as well as the secretary of the Department of Corrections, as Defendants. Compl., [ECF No. 10]. The Complaint contains a myriad of claims, including alleged violations of Plaintiff's First, Eighth, and Fourteenth Amendment rights, all arising out of his expulsion from a drug rehabilitation program in which Plaintiff participated while incarcerated at SCI-Greensburg. *Id.*

While Bennett's claims arise from a multitude of incidents which occurred during his incarceration, the heart of this lawsuit involves a meeting between Bennett and several Defendants regarding his status in the facility's Alcohol and Other Drugs ("A.O.D.") Treatment Program. *Id.* at ¶ 10. Bennett alleges that on November 30, 2012, he was called into Defendant Unit Manager Matthews' office for a meeting at which all Defendants, except for Defendants Wetzel and Mazurkiewicz, were present. *Id.* at ¶ 12. Bennett describes the meeting as a "lynching party, [held] by a bunch of vigilantes, who had come together by W. Matthews command." *Id.* at ¶ 13. According to the Complaint, during the meeting, Defendants were highly critical of a homework assignment he had turned in as a part of his participation in the A.O.D. Program. Due to allegedly inappropriate sexual comments Bennett had made on the assignment, Defendants also demanded that Bennett be placed in a "sexual behavior" program. *Id.* at ¶ 16. Specifically, Bennett alleges that Defendant Matthews stated "[i]f it was up to me, I would remove your ass from class [A.O.D. Program], then throw your ass in the hole, you're going to

---

[2] As the law requires, at this stage of the proceeding, all disputed facts and inferences are to be resolved in favor of Plaintiff, the non-moving party.

do this fucking homework over, and do it the way 'we' like it done, not the way you lived your life." *Id.* at ¶ 18. Bennett alleges that throughout the meeting various Defendants took turns "assassinating" his character, while providing Bennett with no opportunity to defend himself. *Id.* at ¶¶ 24, 26.

At the conclusion of the meeting, Bennett was instructed to redo his homework assignment and to turn it in by December 5, 2012. Bennett alleges that he completed the assignment and turned it in on December 3, 2012; however, Defendants allege that the assignment was never received. *Id.* at ¶¶ 32, 33. Bennett alleges that he was expelled from the A.O.D. Program as a result of his alleged failure to turn in the homework assignment; however, according to documents attached to Plaintiff's Response to the Motion to Dismiss, there were additional reasons for his expulsion from the program including "disruptive and inappropriate behavior." Plaintiff's Response; Exhibit 6, Initial Review Response [ECF No. 36-1]. Bennett alleges that, because of his expulsion from the A.O.D. Program, his impending parole hearing was cancelled. Compl., [ECF No. 10 at ¶ 36].

In addition to the A.O.D. meeting and subsequent repercussions, Bennett alleges that Defendants illegally withheld his tax documents preventing him from filing federal and state income taxes. *Id.* at ¶¶ 21–23. Furthermore, Bennett states that he filed a grievance following his expulsion from the A.O.D. program, and the next day, Defendant Matthews moved Bennett to a new cell in retaliation for filing the grievance. *Id.* at ¶ 39. Lastly, Bennett alleges that he was a victim of "love-connections, bloodties [sic], and personal relationships," because he was disciplined by Defendant Riddle, who is the fiancé of Plaintiff's A.O.D. teacher, Defendant Rabic. *Id.* at ¶ 6.

Bennett unsuccessfully exhausted all administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a). He brings the instant lawsuit in which he seeks from all Defendants jointly, compensatory damages of $135,000, punitive damages of $300,000, "defamation of character" damages of $63,000, and "economic and mental" damages of $45,000 for a combined demand of $543,000. *Id.* at ¶ 42.

The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 11 and 38.

### Standard of Review

1. *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).[3] *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d

---

[3] The Court of Appeals for the Third Circuit has explained the liberal construction of pro se pleadings, as follows:

4

Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences where it is appropriate.

    2.    *Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard*

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)).

---

> The federal rules do not adhere to the ancient principle that a pleading must be construed most strongly against the pleader. Nor do the federal courts require technical exactness or draw refined inferences against the pleader; rather, they make a determined effort to understand what he is attempting to set forth and to construe the pleading in his favor, whenever justice so requires. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law. In these cases, technical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized to determine if any legally cognizable claim can be found within it.

*Lewis v. Attorney General of U.S.,* 878 F.2d 714, 722 (3d Cir. 1989) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1286, at 381-84 (1969)).

However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, '"where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably

6

authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

**Discussion and Analysis**

1. *Due Process Claim*

In his complaint, Bennett alleges that Defendants committed a multitude of constitutional violations and Department of Corrections violations. While none of Bennett's claims are sufficient to survive a motion to dismiss, Bennett's most plausible claim is that Defendants violated his procedural due process rights guaranteed by the Fourteenth Amendment. Compl., [ECF No. 10 at ¶ 13]. The Due Process Clause guarantees certain procedural mechanisms, namely notice and a hearing, before an individual can be deprived of a liberty or property interest by the government. *Grejda v. Longley*, 2012 WL 2861733 at *10 (W.D. Pa. June 20, 2012). To establish a procedural due process violation, "a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. If a person does not have a constitutionally-protected interest, he is not entitled to the procedural protections afforded by the Due Process Clause." *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 339 (1986)).

7

Bennett's due process claim is made up of two distinct, though connected, incidents: first, Bennett alleges that his expulsion from the A.O.D. Program violated the Due Process Clause; and second, Bennett alleges that, as a result of his expulsion from the program, he was denied parole in violation of the Due Process Clause. While it is true that Bennett was not offered notice and a hearing before his dismissal from the A.O.D. Program and subsequent parole denial, neither claim constitutes a procedural due process violation because neither claim is supported by a constitutionally protected liberty or property interest. *Id.*

As to the A.O.D. Program, both the Court of Appeals for the Third Circuit and the United States Supreme Court have held that inmates do not have a constitutional right to participate in such rehabilitative programs while incarcerated. *See Groppi v. Bosco*, 208 F. App'x 113 (3d Cir. 2006); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976 ) ("Congress has given prison officials full discretion to determine eligibility for rehabilitative programs, and prisoners thus have no statutory or constitutional entitlement sufficient to invoke due process."). Additionally, the Pennsylvania Department of Corrections A.O.D. manual clearly states that the program "does not create rights in any person . . . This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections." Pennsylvania Department of Corrections Manual, Policy Number 07.04.01 (Effective Jan. 19, 2006).[4]

As to the denial of parole, insofar as a protected interest does exists, the interest only ensures that an inmate not be denied parole for "arbitrary" or "capricious" reasons. *Block v. Potter*, 631 F.3d 2d 233, 236 (3d Cir. 1980). Bennett alleges that he was denied his parole hearing because of his "illegal" expulsion from the A.O.D. Program. Compl., [ECF No. 10 at ¶

---

[4] *http://www.cor.state.pa.us/portal/server.pt/community/doc_policies/20643.*

34]. However, the documents attached to Plaintiff's Response to Motion to Dismiss reflect that Bennett's "disruptive and inappropriate behavior", as well as "incomplete assignments," were the reasons why he was dismissed from the A.O.D. Program. Plaintiff's Response; Exhibit 6, Initial Review Response [ECF No. 36-1]. There is nothing in the motion to dismiss record that would allow the Court to draw the inference that Bennett was denied his parole hearing for "arbitrary" or "capricious" reasons. On the contrary, the record reflects a pattern of disruptive behavior that resulted in Bennett's dismissal from the A.O.D. Program and subsequent parole hearing denial. Thus, Bennett has failed to show that he was treated in an "arbitrary" or "capricious" manner or that he had a protected liberty or property interest sufficient to assert a procedural due process claim.

The Court finds that the lack of protected interest is reason enough to dismiss Bennett's suit, however, in an abundance of caution, the Court will address Bennett's remaining claims/allegations seriatim.

  2. *First and Eighth Amendment Claims*

Though essentially subsumed into his Fourteenth Amendment Due Process claim, Bennett additionally alleges that Defendants violated his First and Eighth Amendment rights. Compl., [ECF No. 10 at ¶¶ 3, 5]. Bennett alleges that his First Amendment freedom of speech rights were violated when Defendants cited "sexual comments" made by Bennett in class and on homework assignments as one of the reasons for his dismissal from the A.O.D. Program. Plaintiff's Response; Exhibit 6, Initial Review Response [ECF No. 36-1]. Additionally, Bennett alleges his Eighth Amendment rights were violated when, as a result of his expulsion from the A.O.D. Program, he was subjected to "'cruel and unusual' punishment by being humiliated in front of [his] peers, eliminated from class, two weeks after everybody graduated, laughed at by

9

all and scorn by the very authority that introduced [him] to this program." Compl., [ECF No. 10 at ¶ 5].

Despite Bennett's colorful language, his allegations fail to support a plausible claim for either a First or Eighth Amendment violation. Bennett's participation and eventual dismissal from the A.O.D. Program was in the complete discretion of Defendants and therefore Defendants were well within their rights to dismiss Bennett from the program, in part, because of his repeated sexual comments. *Groppi*, 208 F. App'x at 115. Bennett's Eighth Amendment claim revolves around his alleged "illegal" dismissal from the A.O.D. Program; because the Court has already ruled that his dismissal was not "illegal" it follows that his Eighth Amendment claim also fails.

3. *Personnel/Nepotism Allegations*

Throughout his complaint, Bennett asserts that several of the Defendants impermissibly attended the November 20, 2012, meeting regarding Bennett's status in the A.O.D. Program. Compl., [ECF No. 10 at ¶ 18]. However, Defendants Matthews, Mancinni, Marhefka, Rabic, Meadows, and Riddle were all members of the A.O.D. Program team as defined in the Department of Corrections manual, and thus were all permitted to attend.[5] *See* Pennsylvania Department of Corrections Manual, Policy Number 07.04.01 (Effective Jan. 19, 2006).

Additionally, Bennett alleges that Defendant Rabic, his A.O.D. teacher, and Defendant Riddle, his Drug and Alcohol Treatment (DATS) Supervisor, violated the Department of

---

[5] Defendants Wetzel and Mazurkiewicz were not in attendance at the meeting and it is unclear as to why they were named as Defendants, other than due to their supervisory positions. The law is clear that liability can only be imposed on supervisory officials if that official played an "affirmative part" in the complained-of misconduct. *Chincella v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). Bennett has not alleged that Defendants Wetzel and Mazurkiewicz were, in any way, personally involved in the incidents surrounding the claims of this lawsuit. Bennett's claims are classic *respondeat superior* and therefore do not state a claim for relief under § 1983.

Corrections rule against nepotism because the two were engaged. Compl., [ECF No. 10 at ¶ 15]. Bennett seems to insinuate that Defendant Riddle was personally upset at Bennett for using sexual language around Defendant Rabic and that Riddle's personal animosity contributed to Bennett's dismissal from the A.O.D. Program. *Id.* The Court refuses to try and discern the subjective factors, if any, involved in Bennett's removal from the program because the objective factors cited are sufficient. Furthermore, the Department of Corrections policy Bennett cites on nepotism concerns familial relationships between employees and inmates *not* relationships between employees and employees. Plaintiff's Response; Exhibit 5, Specific Rules and Regulations [ECF No. 36-1 at ¶ 6]. Therefore any allegation concerning personnel or nepotism is not relevant to this suit.

    4. *Withholding of Tax Paperwork Allegation*

Bennett alleges that Defendants interfered with his rights regarding his taxes stating "[t]here was no ethical reason, nor is there a D.O.C. policy that states that [he] can't file his federal/state income taxes, [he] is being denied his constitutional rights to have access to his funds, and being denied the opportunity to support himself." Compl., [ECF No. 10 at ¶ 22]. While it is unclear exactly what Bennett is alleging concerning his taxes, the Court infers that Bennett claims that Defendants are withholding tax filing documents and thus preventing him from receiving a tax refund.

In accordance with Department of Corrections Policy, "Federal, State, and local income tax filing documents shall not be delivered to an inmate, as these may be used to file fraudulent tax returns. If an inmate has a legitimate need to file a tax return, he/she may request the proper forms from the Unit Management Team." Pennsylvania Department of Corrections Manual, Policy Number DC-ADM 803 (Effective Dec. 23, 2011). Additionally, in documents put forth by

Bennett, the chief grievance officer at SCI – Greensburg stated that Bennett had been given opportunities to come to Defendant Matthews' office to file his taxes but refused and that Bennett never provided Matthews with a home address to which his tax documents could be sent. Plaintiff's Response; Exhibit 13, Final Appeal Decision [ECF No. 36-1]. Thus, Bennett's tax allegations, whatever role they may play in his complaint, are inconsequential to this suit.

*5. Futility*

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Given that the Court has already provided Plaintiff with an opportunity to amend, [see ECF No. 26], the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012). Moreover, the Court finds that it would be futile to allow Bennett to amend his complaint as he has failed to state a constitutional claim.

For the reasons discussed *supra*, the Court will not grant Plaintiff leave to amend as it would be futile.

**Conclusion**

For the foregoing reasons, the Motion to Dismiss filed by Defendants will be granted and the Complaint will be dismissed in its entirety. An appropriate Order follows.

**ORDER**

**AND NOW**, this 18th day of October, 2013, upon consideration of the "Motion to Dismiss For Failure to State a Claim" filed by Defendants [ECF No. 32], IT IS HEREBY **ORDERED** that the Motion is **GRANTED** in its entirety.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED.**

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

*/s Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc: Jamal Bennett
ED 9008
SCI Dallas
1000 Follies Road
Dallas, PA 18612

Scott Bradley
Office of Attorney General
Email: sbradley@attorneygeneral.gov